# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GREGORY ISLAR,<br><br>     *Plaintiff*,<br><br>v.<br><br>WHOLE FOODS MARKET GROUP, INC.,<br><br>     *Defendant*. | Civil Action No. 16-1098 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Gregory Islar was terminated from his position at a supermarket operated by Defendant Whole Foods Market Group, Inc. ("Whole Foods").  Islar now brings claims against Whole Foods for (1) violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981; (2) breach of implied contract; and (3) negligent retention and supervision.  *See* Dkt. 1-1 at 8–15.  Whole Foods has moved to dismiss the third count for failure to state a claim under the rule of *Griffin v. Acacia Life Insurance Co.*, 925 A.2d 564, 576–77 (D.C. 2007).  Dkt. 4.  For the reasons explained below, Whole Foods's motion will be granted.

## I.  BACKGROUND

For purposes of Whole Foods's motion to dismiss, the following allegations in Islar's complaint are taken as true.  *See, e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Islar, who is African American, was employed by Whole Foods between April 1996 and May 2013.  Compl. ¶¶ 4, 6.  Starting in 2005, he served as the Customer Service Team Leader at the Whole Foods supermarket in the Georgetown neighborhood of Washington, D.C.  *Id.* ¶ 6.  Islar was responsible for supervising cashiers, and reported to the Store Team Leader and Assistant Store Team Leaders.  *Id.*

On January 19, 2013, Whole Foods employee Jean Michel Bartolo was transferred to the Georgetown store in the position of Store Team Leader—that is, as Islar's supervisor.  *Id.* ¶¶ 8, 9.  Islar alleges that Bartolo "had developed a reputation for mistreating employees and terminating a large number of employees."  *Id.* ¶ 7.  Just before Bartolo was set to begin, an Assistant Store Team Leader asked Islar to "get rid of" Islar's assistant, Kim Wilson, because Bartolo "did not get along with her."  *Id.* ¶¶ 7, 10.  Wilson had previously filed a complaint against Bartolo.  *Id.* ¶ 7.  Islar refused, saying that he would not demote or terminate Wilson "because she was a good employee."  *Id.* ¶ 8.

Upon Bartolo's arrival, he "[i]mmediately . . . began targeting [Islar] for termination." *Id.* ¶ 9.  Whole Foods policy provides that employees may be terminated after receiving three written reprimands.  *Id.*  Islar received his first such reprimand from Bartolo on January 21, 2013, just two days after Bartolo arrived.  *Id.*  A cashier had temporarily left her register to help other employees, and had done so at the request of an Assistant Team Leader.  *Id.*  Islar was not at work that day.  *Id.*  Nonetheless, Bartolo issued Islar a written reprimand "because the cashier [had] left the register."  *Id.*  Islar received his second reprimand on February 4, 2013, the day after Superbowl Sunday.  *Id.* ¶ 10.  Islar had not worked that Sunday, but Bartolo reprimanded him anyway "because the check[-]out lines [had been] too long."  *Id.*  According to Wilson, there had been "no lines for customers" that Sunday.  *Id.*

After receiving the second reprimand, Islar complained to the Regional Manager and Human Resources Manager that he "was being mistreated by" Bartolo.  *Id.* ¶ 11.  The HR Manager set up a meeting in the hopes of mediating the dispute.  *Id.*  During the meeting, Bartolo said that Islar "was not ready to be a team leader" and "should step down from his position."  *Id.*

2

Islar responded that he had held that job for seven years and would not step down.  *Id.*  The dispute was not resolved.  *Id.*

On May 2, 2013, Islar received his third reprimand because "there were lines at cash registers."  *Id.* ¶ 12.  Islar was immediately terminated.  *Id.*  Islar alleges that he at no point "engage[d] in any conduct which warranted discipline and/or termination."  *Id.* ¶ 18.

According to Islar, Bartolo has terminated approximately twenty African American employees at the Georgetown store since January 2013.  *Id.* ¶ 13.  Islar says these employees were written up for "insignificant issues," such as alleged failure to greet or smile at customers or because a customer complained about having to wait in line.  *Id.*  Minority employees were terminated as soon as they received their third written reprimand.  *Id.*  But Bartolo "did not terminate . . . non-African American employees for the same alleged infractions."  *Id.*

On May 2, 2016, Islar filed the instant lawsuit against Whole Foods in D.C. Superior Court.  Dkt. 1 at 1.  His complaint includes three counts.  Count I alleges that Bartolo violated the Civil Rights Act of 1866, 42 U.S.C. § 1981, by applying the Whole Foods discipline policy "in an arbitrary and discriminatory manner," by demanding that Islar step down, and by retaliating against Islar after Islar complained about Bartolo's conduct.  Compl. ¶¶ 15–21.  Count II alleges that Bartolo violated the Whole Foods employee handbook, which Islar says constitutes a breach of an implied contract.  *Id.* ¶¶ 22–25.  And Count III alleges that Whole Foods negligently retained and supervised Bartolo, in that Whole Foods knew about Bartolo's "mistreatment of employees," his "arbitrary and discriminatory enforcement" of the disciplinary policy, and his "disproportionate termination of minority employees," but failed to correct the behavior.  *Id.* ¶¶ 26–30.  On June 13, 2016, Whole Foods removed the case to this Court,

invoking the Court's diversity and federal question jurisdiction.  Dkt. 1 at 3 (citing 28 U.S.C. §§ 1331, 1332).

Whole Foods's motion to dismiss Count III of Islar's complaint—*i.e.*, the count for negligent retention and supervision—is now before the Court.  Dkt. 4.

## II.     STANDARD OF REVIEW

A party moving to dismiss a complaint under Rule 12(b)(6) bears the burden of showing that the complaint "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6); *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  The Court need not accept as true any legal conclusions disguised as factual allegations, any "'naked assertion[s]' devoid of 'further factual enhancement,'" or any "formulaic recitation[s] of the elements of a cause of action." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).  The plaintiff, however, is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

## III.     ANALYSIS

Under District of Columbia law, "negligent supervision and retention" is a tort predicated on the employer's "direct negligence," rather than on a theory of vicarious liability.  *Phelan v.*

*City of Mount Rainier*, 805 A.2d 930, 937 (D.C. 2002).[1]  As with the more general tort of negligence, negligent supervision occurs when the employer "breaches a duty of care which proximately results in injury" to the plaintiff.  *Id.*  For the more specific tort of negligent supervision, however, the plaintiff must further show that the employer "knew or should have known [that] its employee behaved in a dangerous or otherwise incompetent manner," and that the employer nonetheless "failed to adequately supervise the employee."  *Id.* at 937–38.

The D.C. Court of Appeals added another important caveat in *Griffin v. Acacia Life Insurance Co.*, 925 A.2d 564 (D.C. 2007), holding that a "claim of negligent supervision may be predicated only on common law causes of action" or on "duties otherwise imposed by the common law."  *Id.* at 576.  In *Griffin*, the plaintiff alleged that her manager had "pulled down a co-worker's brassiere strap" and then retaliated against the plaintiff after she complained.  *Id.* at 566.  She brought claims against the company for sex discrimination and retaliation under the D.C. Human Rights law, and also alleged that the company had negligently supervised the manager. *Id.* at 571.  The Court of Appeals rejected the negligent supervision claim because "the common law did not recognize an employer's duty to prevent the sort of sexual harassment alleged in [the plaintiff's] complaint."  *Id.* at 576.  Although "a negligent supervision claim could lie in a sexual harassment case if supported by a viable claim of independent tortious conduct as recognized at common law" (such as, for example, a claim of battery), "no evidence of independent tortious conduct of that kind was proffered or presented" in *Griffin*.  *Id.* at 577.  At the same time, however, the court declined to decide whether the offending employee's conduct—that is, the conduct of the "servant"—must be "independently tortious."  *Id.* at 576

---

[1]  D.C. case law does not appear to distinguish between "negligent supervision" and "negligent retention."  *See, e.g.*, *Phelan*, 805 A.2d at 937.

n.32.  "For present purposes," the court wrote, "it is sufficient to say that a negligent supervision action requires a breach by the *employer*"—that is, by the master—"of a duty owed to the plaintiff, and that this duty must be imposed by the common law and not by statute."  *Id.* (emphasis added).

Here, Whole Foods moves to dismiss Islar's negligent supervision claim on the ground that he has not alleged the breach of a predicate common law duty by Whole Foods as required by *Griffin*.  Dkt. 4 at 3–4.  In response, Islar does not dispute that a negligent supervision claim cannot be predicated upon an alleged violation of 42 U.S.C. § 1981.  *See* Dkt. 7 at 7–8; *see also Newman v. Borders, Inc.*, 530 F. Supp. 2d 346, 350–51 (D.D.C. 2008).  Instead, Islar argues that he can predicate his negligent supervision claim on either (1) his claim for breach of implied contract or (2) his unasserted claim for intentional or negligent infliction of emotional distress. Dkt. 7 at 7.  The Court evaluates each theory in turn.

**A.      Breach of Contract as a Predicate for Negligent Supervision**

The Court first considers Islar's theory based on breach of contract.  For this purpose, the Court assumes (but does not decide) that Bartolo's alleged conduct effected a breach of contract between Islar and Whole Foods.  As framed by *Griffin*, the question is whether an employer has a "common law duty" to prevent its employees from breaching the employer's contracts with its other employees.  *See* 925 A.2d at 576 & n.32.

Admittedly, *Griffin* does not clearly foreclose the possibility that a negligent supervision claim might be predicated upon a breach of contract.  For example, *Griffin* at one point states that negligent supervision claims may be predicated "only on common law causes of action," 925 A.2d at 576—a class that would seem to include causes of action for breach of contract, *see, e.g.*, *Campbell v. Fort Lincoln New Town Corp.*, 55 A.3d 379, 382 (D.C. 2012) (characterizing

6

breach of contract as a "common law cause[] of action").  And *Griffin* expressly declined to hold

that the servant/employee's conduct must be "independently tortious."  *Id.* at 576 n.32.  Instead,

*Griffin* phrases its holding in terms of more-general "common law duties" (as opposed to

common law *tort* duties), leaving open the door to arguments about whether there is a "duty" not

to breach contracts and, if so, whether that duty is imposed by the contract itself or by common

law.

      Nonetheless, in applying state law, this Court is not merely a "ventriloquist's dummy" to

local courts.  *Norwood v. Marrocco*, 780 F.2d 110, 113 n.4 (D.C. Cir. 1986).  Rather, the Court

must apply D.C. law conscientiously, with the goal of "achiev[ing] the same outcome [it]

believe[s] would result if the District of Columbia Court of Appeals considered th[e] case."  *Metz*

*v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 22 (D.C. Cir. 2014) (internal quotation mark

omitted); 19 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE

§ 4507 & n.30 (3d ed. updated Oct. 2016).  And the Court concludes here that the D.C. Court of

Appeals would not allow a negligent supervision claim to be predicated on a breach of contract

alone.

      *First,* as Whole Foods rightly notes, to hold otherwise would effectively "assign tort

liability to breaches of contract."  Dkt. 8 at 3.  On Islar's theory, any time an employee breaches

a contract, and the employer should have known the breach was likely, the party suffering from

the breach would have a cause of action not just in contract but also in tort.  D.C. law is clear,

however, that "the mere negligent breach of a contract . . . is not enough to sustain an action

sounding in tort."  *Hunter ex rel. A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 186 n.18

(D.D.C. 2014) (alteration in original) (quoting *Curry v. Bank of Am. Home Loans Servicing*, 802

F. Supp. 2d 105, 109 (D.D.C. 2011)); *see also, e.g.*, *KBI Transp. Servs. v. Med. Transp. Mgmt., Inc.*, 679 F. Supp. 2d 104, 108–09 (D.D.C. 2010).

*Second*, although the *Griffin* court found it "unnecessary . . . [f]or present purposes" to hold that the servant/employee's conduct must be "independently tortious," the opinion's reasoning suggests that the servant's conduct must at least be of a kind actionable as a common law tort. *See, e.g.*, *Griffin*, 925 A.2d at 576 (citing PROSSER & KEETON ON TORTS § 80 (5th ed. 1984) and the RESTATEMENT (SECOND) OF TORTS § 314B(1) (1965) for descriptions of the "common law . . . duties" that employers owe their employees); *id.* at 576 & n.31 (dismissing plaintiff's claim in part because her claims "did not include any allegations of conduct independently tortious" and because "[s]exual harassment has never been a common law tort"); *id.* at 577 (explaining that a negligent supervision claim for sexual harassment could lie "if supported by a viable claim of independent tortious conduct as recognized at common law"). And the Court of Appeals further noted that it had previously "suggested," albeit without deciding, that "the conduct of the servant must be independently tortious." 925 A.2d at 576 n.32; *see Daka, Inc. v. McCrae*, 839 A.2d 682, 693 (D.C. 2003) (stating that it is "most probably right" that "negligent supervision . . . requires logically antecedent proof of a tort committed by the supervised employee"). This is the conclusion the Court believes the D.C. Court of Appeals would adopt if presented with Islar's argument in this case.

*Third*, while Islar asserts that "Whole Foods had a duty under D.C. common law to adequately supervise its employees to ensure they did not breach Whole Foods'[s] contract with its employees," Dkt. 7 at 7, Islar cites no authority for that novel contention. Nor does he cite any case in which a negligent supervision claim has been allowed to proceed based solely on an alleged breach of contract. *See id.* The Court has not located one, either. For all these reasons,

the Court concludes that Islar's alleged breach of contract contact claim is an improper basis for his negligent supervision claim under District of Columbia law.

**B.**     **Infliction of Emotional Distress as a Predicate for Negligent Supervision**

As a fallback, Islar argues that his negligent supervision claim "is predicated on a claim for intentional or negligent infliction of emotional distress," Dkt. 7 at 9—notwithstanding that his complaint asserts neither type of claim, *see* Compl. ¶¶ 15–30.  As an initial matter, it is not obvious that a plaintiff can ground a negligent supervision claim on a cause of action which he does not actually assert.  The Court need not reach that issue, however, as it is clear that the alleged facts are insufficient to state a claim for either intentional or negligent infliction of emotional distress.

To start, Islar has not pleaded facts sufficient to state a claim for intentional infliction of emotional distress.  Under D.C. law, intentional infliction of emotional distress requires proof of "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002).  "The conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)).  This is a "very demanding standard," "[e]specially in the employment context." *Brown v. Children's Nat. Med. Ctr.*, 773 F. Supp. 2d 125, 137 (D.D.C. 2011).  "[G]enerally, employer-employee conflicts do not rise to the level of outrageous conduct." *Duncan v. Children's Nat. Med. Ctr.*, 702 A.2d 207, 211–12 (D.C. 1997) (collecting D.C. cases).  Here, the Court agrees with Whole Foods that Islar "simply does not allege the sort of 'extreme and outrageous' conduct necessary to distinguish his case from a garden-variety wrongful

termination claim." Dkt. 8 at 5; *see also, e.g.*, *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d

235, 249 (D.D.C. 2011) (holding that allegations that a supervisor submitted "allegedly

unjustified 'write-ups' [of the plaintiff] . . . [did] not rise to the level of 'extreme and outrageous

conduct,'" and explaining that "much more extreme" conduct has "routinely" been held to be

insufficiently outrageous).

 Nor has Islar pleaded facts that constitute negligent infliction of emotional distress.

Under D.C. law, a plaintiff may recover for negligent infliction of emotional distress under either

of two theories. *Lesesne v. District of Columbia*, 146 F. Supp. 3d 190, 195 (D.D.C. 2015). "The

well-established 'zone of danger' test allows a plaintiff to recover 'for mental distress if the

defendant's actions caused the plaintiff to be in danger of physical injury and if, as a result, the

plaintiff feared for his own safety.'" *Id.* (quoting *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d

789, 796 (D.C.2011) (en banc)).  Alternatively, a plaintiff can recover if, among other things,

there is a "special relationship" between the parties that "necessarily implicates the plaintiff's

emotional well-being." *Hedgepeth*, 22 A.3d at 811–12.  Neither theory is available to Islar.  Islar

does not allege any risk of physical injury or that he feared for his own safety, so there can be no

"zone of danger" liability.  And Islar has not alleged that he and Bartolo had anything other than

arm's length, supervisor-employee relationship, foreclosing any "special relationship" liability.

 As such, Islar has not identified any predicate claim under *Griffin* that would permit him

to recover on a negligent supervision or retention theory.

**CONCLUSION**

Whole Foods's motion to dismiss Count III of Islar's complaint, Dkt. 4, is accordingly

**GRANTED**.  It is further **ORDERED** that Whole Foods shall file an answer to the remainder of

Islar's complaint on or before December 1, 2016.

   **SO ORDERED**.


                                          /s/ Randolph D. Moss
                                          RANDOLPH D. MOSS
                                          United States District Judge


Date:  November 17, 2016